IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BLUE TRAIN, INC dba** <br> **PLAY BAR AND GRILL** | : CASE NO.: 1:25-cv-01950 |
| Plaintiff, | : JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| **CITY OF CLEVELAND**, *et al.* | |
| Defendants. | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

Plaintiff, Blue Train, Inc., by and through undersigned counsel, respectfully moves this Court under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend its judgment entered on September 30, 2025 (Doc. 8). In Support of this Motion, Plaintiff relies on the accompanying Memorandum, incorporated herein as if fully rewritten.

As explained in the accompanying Memorandum, Plaintiff brings this motion on the basis of newly discovered evidence. Plaintiff also asserts the Court's decision was based on an error of law. For these reasons, Plaintiff respectfully requests that this motion be granted and 1) that the Court's order and Judgement of September 30, 2025 be vacated, and 2) that Plaintiff's Motion for Temporary Restraining Order be granted.

Respectfully submitted,

By:  \S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**
323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone: (216) 241-0520
Fax:    (216) 241-6961
E-mail: jpm@jmorse-law.com

COUNSEL FOR PLAINTIFF

## MEMORANUDM IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff respectfully requests that this Court reconsider its decision of September 30, 2025 in which the Court denied Plaintiff's Motion for a Temporary Restraining Order. (Doc. 8). This case arises from the hasty closure of Play Bar and Grill by both the City of Cleveland and Flats East Phase 1 Retail, LLC.

On September 7, 2025, the City of Cleveland unilaterally shuttered Play Bar and Grill after a shooting in the Flats. On September 10, 2025, Plaintiff filed suit in the Cuyahoga County Court of Common Pleas seeking a Temporary Restraining Order against the City of Cleveland, Mayor Justin Bibb, Police Chief Dorothy Todd and Department of Public Safety Director Dornat Drummond ("City Defendants") as Plaintiff's business was closed for several days with absolutely no recourse. The same day that Plaintiff filed suit, the City of Cleveland, via Defendant Dornat Drummond, attempted to remediate its violation of Plaintiff's due process rights by issuing a nuisance declaration against Plaintiff which outlined the process to appeal such a declaration. (Doc. 3 Ex. A).

Due to the intervening acts of George Kimson and Flats East Phase 1 Retail, LLC ("Flats Defendants"), Plaintiff was not afforded an opportunity to comply with City Defendants post-deprivation measures. Instead, Flats Defendants changed the locks to the premises on September 11, 2025. (Doc. 7 Ex. E). Notably, when Flats Defendants Counsel reached out to Plaintiff's Counsel on September 11, 2025, no mention was made of the lockout. (*Id.*) On September 12, 2025, Flats Defendants provided notice of the lockout via Counsel, claiming that said lockout was in accordance with prior notices of default. (*Id.*).

Ultimately, the matter was removed to this Court and the Court denied Plaintiff's request for a Temporary Restraining Order.

### I. Standard for Relief under Rule 59(e)

Motions to alter or amend judgments, filed under Fed. R. Civ. P. 59(e), are "entrusted to the court's sound discretion." *Keweenaw Bay Indian Cmty. v. United States*, 940 F.Supp. 1139, 1140 (W.D. Mich. 1996) (citing *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)). A court may

grant a motion under Rule 59(e) "only if there was '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *ACLU of Kent. v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

## II. Law and Argument

### A. Newly Discovered Evidence

Since the initial briefs were filed in this matter and while the Court was contemplating its decision and order, a deadly shooting occurred in the Flats outside of Punch Bowl Social on September 28, 2025.[1] To date, despite the deadly consequences of this incident, the City of Cleveland has chosen not to board up the establishment in question despite its decision to close Play Bar and Grill within hours of a non-deadly shooting.

Additionally, since the time that the City of Cleveland chose to shutter Plaintiff's business without an initial opportunity for due process, Plaintiff has undertaken investigation of the alleged matters that precipitated the closure. Part of Plaintiff's investigation involved, through the use of a private investigator, attempting to find witnesses to or parties to the shooting that occurred in the Flats on September 7, 2025. On October 5, 2025, Counsel, via private investigator, was provided a statement from one of the victims of the shooting, L.T. In their statement, L.T. acknowledged that they had been shot in the incident and the shots came from the area of Margaritaville (notably, that is also the area where Punch Bowl Social is located), not Play Bar and Grill. *See* Exhibit A.

Pursuant to Rule 59(e), "newly discovered evidence" may serve as the basis for altering or amending a judgment subject to the limitation that "the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Plaintiff had been diligently pursuing *any* information related to the shooting on September 7, 2025 and was only

---

[1] Olivia Mitchell, *Cleveland man killed in Flats shooting outside bar identified by authorities*, CLEVELAND.COM (September 29, 2025, 2:25 PM), https://www.cleveland.com/news/2025/09/cleveland-man-killed-in-flats-shooting-outside-bar-identified-by-authorities.html.

able to obtain a statement from one of the victims on October 1, 2025. Furthermore, the shooting at Punch Bowl Social occurred just prior to this Court issuing its ruling.

This new evidence is paramount to this matter. City Defendants did not shutter Punch Bowl Social immediately after a deadly act of violence. While Plaintiff acknowledges there *may* be a different history between this establishment and the city, there is now evidence that the shooting which precipitated the closure of Plaintiff's establishment may have occurred somewhere else, which was in fact the location of another shooting approximately three weeks later. Yet, the establishments in the Flats clearly remain open with the City of Cleveland's blessing.

B. Error of Law

The Court held in its ruling that Plaintiff has not demonstrated, at a minimum, a likelihood of success on the merits or irreparable injury. (Doc. 8, p. 4). The Court noted that the City Defendants notice of nuisance set forth opportunities for hearing as to the emergency decision to shut down the premises and the Flats Defendants could not be held liable under the Fourteenth Amendment.

Plaintiff asserts that the City Defendants' nuisance notice provided no meaningful opportunity for due process. To begin with, City Defendants' attempts to provide post-deprivation measures to Plaintiff did not occur until Plaintiff filed suit against City Defendants. Once Plaintiff was provided an opportunity to contest City Defendants' assertions, Flats Defendants stepped in and denied Plaintiff the opportunity to retain their business.

Plaintiff acknowledges that claims alleging violations of the Fourteenth Amendment generally apply to state actions, not private conduct. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S. Ct. 836, 92 L. Ed. 1161 (1948); *see also Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (affirming that state action is required for Fourteenth Amendment claims). However, in certain circumstances, a private entity may be held liable under the Fourteenth Amendment. To hold a private entity liable under the Fourteenth Amendment, a plaintiff must show that the entity's actions are reasonably attributable to the state. This can be done through the Public Function Doctrine, state compulsion, or a close nexus between the state and the private entity. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

4

937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982); *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (applying the state action tests).

Plaintiff asserts that City Defendants and Flats Defendants were acting in concert. Flats Defendants locked Plaintiff out of the premises on September 11, 2025, the day after Plaintiff filed suit against City Defendants. Flats Defendants provided notice of the lockout to City Defendants before providing it to the Plaintiff. Plaintiff was provided notice of the lockout one day after it had occurred via email to Counsel. (Doc. 7, Ex. E). However, City Defendants were already aware of the lockout as the boards had been removed prior to September 12, 2025. Despite all of this, Plaintiff's Counsel was not provided notice about the lockout on September 11, 2025, when introductory emails were sent. (*Id.*) Plaintiff was never provided a meaningful opportunity for due process as a third party, Flats Defendants, stepped in, engaged with City Defendants, and took action that deprived Plaintiff of any opportunity to be heard. This assertion is bolstered by Flats Defendants' own exhibits which show communications between counsel for Plaintiff and Flats Defendants was ongoing prior to the September 7, 2025 shooting and Plaintiff was attempting to work with Flats Defendants in regard to any alleged defaults with the lease. (Doc. 7 Exs. B-D). Only when City Defendants were faced with a lawsuit did Flats Defendants exercise any sort of action regarding the alleged defaults, and decisions were made by both groups of Defendants without any notice to Plaintiff until after the wanted goals were achieved.

The Court also held that Plaintiff would be unable to establish a tortious interference with business claim as the Flats Defendants are party to the contract at issue and Plaintiff failed to show the City's temporary boarding of the premises was unjustified. Flats Plaintiffs can be liable for tortious interference with a business relationship claim. Generally, it is well established that though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference. *Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36 (1989). However, "[a]n exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with

5

business resulting as a mere consequence of such breach." *Id.* at 47. Plaintiffs are not foreclosed from pursuing their claim against Flats Defendants. Furthermore, Plaintiff asserts that the temporary boarding of the premises by City Defendants was unjustified. As discussed above, despite Play Bar and Grill's closure, violence is still erupting in the Flats. If the city was justified in summarily shutting down Play Bar and Grill, the entirety of the Flats should be boarded up.

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion for reconsideration and vacate its prior decision, thereby issuing a temporary restraining order in this matter.

Respectfully submitted,

By: \S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**
323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone: (216) 241-0520
Fax: (216) 241-6961
E-mail: jpm@jmorse-law.com

COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

A copy of the foregoing was electronically filed with the Clerk of Courts on this 23rd day of October, 2025. Notice of this filing will be served upon opposing counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

\S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**

## EMPIRE INVESTIGATIONS, INC.
7452 Broadview Road, Suite 222
Cleveland, Ohio 44134
(216) 324-3071
empire@en.com

October 4, 2025

Joe Morse, Esq.
323 West Lakeside Avenue
Second Floor
Cleveland, Ohio 44113

RE: Play Bar and Grill

Dear Joe:

Enclosed please find the statement of ▮▮▮▮▮

If you have any questions regarding this matter, please contact me at your earliest convenience.

Very truly yours,

Tom Pavlish
TP/ba
Enclosure

**EXHIBIT A**

Attorney-Client Privilege     [1]     Investigative Work Product

**Statement of** 

TP    Today's date is October 1, 2025. This is the statement of ▓▓▓▓ how old are you?

LT    45.

TP    ▓▓ I'd like to direct your attention to September 7, 2025, specifically the afternoon hours shortly after the Browns game. Did you have an occasion to be in the Flats?

LT    Yes, I was in the Flats.

TP    Okay. What were you doing down there?

LT    We had just finished watching the game, at, we, we bar hopped, and around the ti, at that time, we decided that we was gonna either stay downtown or go, you know, back up on to where our side, where we live at, but we went, and they, we see how packed everything was, so when walked, when we got to Play, at the, by, we, we stayed in front of Play for about 15 minutes, and...

TP    Did you ever enter Play?

LT    No, never entered Play.

TP    Okay. Were you aware of people, people at Play or the Fire Department evacuating Play? Were you aware of that?

LT    We did see people coming out, we did see people coming out, but...

TP    Was that a large amount of people that were coming out?

LT    It was so many people down there. I, I can't, like I, but I did remember seeing people coming out of Play though. People was coming out of Play and we did wonder like what was happening. We didn't know what was going on, but like I said, I was across the street...

TP    When you say you were across the street, Lonnie, specifically where were you?

LT    I was standing across the street in front of the stop sign, well a little bit behind the stop sign.

Attorney-Client Privilege  [2]  Investigative Work Product

TP  Okay.

LT  Across the street in front of Play.

TP  Across the street and in front of Play.  Where in relation to the open parking lot?

LT  On, on the side of Play, but across the street, right across the street it's a, the parking lot is, is, is to the left...

TP  Um-hum...

LT  I mean you know.  So I'm at the stop sign that's directly right in front of Play.

TP  Okay.

LT  Across the street though.

TP  What were you doing there?

LT  We stopped and stood there and one of my friends, they happen to see somebody they knew, they was talking to them for a second, and we was all just, we was there for, for a couple minutes.

TP  How would you describe the environment out there at that time?

LT  It lookeded like a good, happy environment, like everybody was enjoying their self, you know, they, it's the Browns day, you know, everybody it lookeded like it was, it was one of 'em, you know, it was, it was like just, it was a nice day, it was a nice day.

TP  You're talking about the environment outside of Play?

LT  Outside of Play.

TP  Okay.

LT  Yeah.

TP  Was the Flats packed?

LT  Yeah, it was packed.

TP  Okay.  Was there, were you aware of any conflict that jumped off?

Attorney-Client Privilege     [3]     Investigative Work Product

- LT    No, no conflict. That's what, that's what is so mind bothering me with that because I didn't hear no, no, no, nobody, you know, you know how somebody get into it with somebody? I didn't hear none of that.

- TP    Okay.

- LT    All...

- TP    Were you aware of any conflict in Play or...

- LT    No...

- TP    Or outside of Play?

- LT    No.

- TP    Okay. Am I correct in saying that you were struck by bullets?

- LT    I was struck by bullets. Yes.

- TP    Okay. Tell me how, tell me about that.

- LT    Well I had my back turned, and when I heard the gunshots go off, like I said, I'm, I'm behind the stop sign across the street from Play, and I hear the shots go off, so I instantly ran to the right and I ran between a van and a car that's across the street from Play, and I happen to look down at my leg, and I seen that I got hit. So, my first mind, my instinct in my mind was like, I need to get somewhere safe and get this, you know, to get it taken care of, so I, I, I walked into Play and they let me, they let me in, and let, and let me sit there until the ambulance came.

- TP    Could you determine where the gunshots originated from?

- LT    Where, coming from Margaritaville, that's behind me, and the parking lot across the street, as you see on the video, you see, you know...

- TP    Okay. You're certain that's where the shots were coming from?

- LT    Yes,

- TP    Did any of those shots ring out from Play?

- LT    No.

Attorney-Client Privilege      [4]      Investigative Work Product

- TP    Or in the vicinity of Play?

- LT    Not at all.

- TP    You're certain?

- LT    I'm certain.

- TP    Can you approximate how far you were from Play when you were struck?

- LT    _____, it doesn't, I mean, what's...

- TP    _____, it was Browns opener. How many football fields if you can approximate?

- LT    I was direct, directly across the street. How you cross the street from, from one, from one side to another, that's how, that's how far I was from Play.

- TP    Okay. So, you were aware that you were struck, and you entered Play. Am I correct?

- LT    Correct.

- TP    Okay. Well, I recognize you had just been shot, can you approximate how many people were in Play at that time? Was it crowded? Was it....

- LT    No, it wasn't crowded. They, it was already crowd, like I said, like over the story, I didn't know that they was letting people out because of the fire, you know, it was too many people, I didn't know, but it wasn't crowded. It wasn't crowded at all. It was, I let, I can sit down, I sat in the first, it was, it, the whole front, I guess they call them the VIP Sections, it was empty. Wasn't nobody there.

- TP    Okay. And how much time elapsed from the period of time in which you had been shot until you entered Play?

- LT    What time, how much...

- TP    How much...

- LT    How long?

- TP    Yes, if you recall.

Attorney-Client Privilege  [5]  Investigative Work Product

- LT  Oh it wasn't long at all, like um, I'd say it took about five minutes, like five minutes for me knowing, from the, from the hearing the shots until entering Play...

- TP  Okay...

- LT  Play, about five minutes, yeah.

- TP  Were you surprised when you learned that the city had boarded up Play after?

- LT  I was shocked.

- TP  Okay. Why were you shocked?

- LT  Because like it wasn't they fault. It wasn't like, it wasn't they, like, like how you boarding up something that didn't come from Play, didn't start from Play, you know? The shots started from Margaritaville on up.

- TP  Did you use any alcohol or drugs that day?

- LT  No, not at all.

- TP  Nothing?

- LT  Nothing.

- TP  Is there anything you would like to add to this statement?

- LT  We miss Play. Play need to be re, reopened because, because it's not, it's not their fault. It's not their fault at all that, you know, that that happened. You know, eventually I was one of the persons that got hit, that got shot that day. I' sorry for the other people that was involved too, but Play was not, it wasn't their fault.

- TP  ▓▓▓▓ has anyone promised you anything in exchange for speaking with me today?

- LT  No.

- TP  Has anyone suggested to you how you should respond to questions if you are asked question of this nature?
- LT  No.

Attorney-Client Privilege     [6]          Investigative Work Product

TP   Have you agreed to speak with me today?

LT   Yes.

TP   Have you agreed to permit me to tape record our interview?

LT   Yes.