IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BLUE TRAIN, INC dba** : CASE NO.: 1:25-cv-01950 | |
| **PLAY BAR AND GRILL** : | |
| : | |
| Plaintiff, : JUDGE PATRICIA A. GAUGHAN | |
| : | |
| vs. : | |
| : | |
| **CITY OF CLEVELAND, *et al.*** : | |
| : | |
| Defendants. : | |

**PLAINTIFF'S OPPOSITION TO CITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Blue Train, Inc., by and through undersigned counsel, herein submits its opposition to the Motion for Judgement on the Pleadings filed by the City of Cleveland, Mayor Justin Bibb, Chief of Police Dorothy Todd, and Chief Director of Public Safety Dornat A. Drummond ("City Defendants") on October 1, 2025. (Doc. 11).

Plaintiff contends that its complaint does in fact allege sufficient facts to state causes of action against City Defendants. Therefore, the Court should deny City Defendants' Motion. The Opposition to the Motion is set fort in the accompanying Memorandum, incorporated herein as if fully rewritten.

Respectfully submitted,

By: \S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**
323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone: (216) 241-0520
Fax: (216) 241-6961
E-mail: jpm@jmorse-law.com

COUNSEL FOR PLAINTIFF

**MEMORANUDM OF POINTS AND AUTHORITIES IN OPPOSITION**

On September 7, 2025, the City of Cleveland, Mayor Justin Bibb, Police Chief Dorothy Todd, and Chief Director of Public Safety Dornat Drummond ("City Defendants") made the decision to board up Play Bar and Grill, a thriving minority-owned business operated by Plaintiff, without notice or hearing. (Amended Complaint, ¶ 6). City Defendants claim their actions were justified because of a shooting that occurred in the area of West 10th and 11th Streets on that evening. (Amended Complaint, ¶ 6). In fact, City Defendants allege that Plaintiff's establishment had a "long history of criminal incidents occurring at, inside, or in the immediate vicinity of" Play Bar and Grill. (City Defendants' Answer, ¶ 7).

On September 10, 2025, after several days of lost business with no foreseeable end, Plaintiff filed suit against City Defendants in the Cuyahoga County Court of Common Pleas. (Verified Complaint and Motion for Temporary Restraining Order). Once Plaintiff sought legal recourse for City Defendants' actions, City Defendants, on September 10, 2025, "provided Plaintiff with written notice of the reasons for the City's decision to board up the Premises and an opportunity to be heard." (City Defendants' Answer, ¶ 10). The following day, City Defendants, after speaking with Plaintiff's landlord (Flats Defendants) and learning that Play Bar and Grill would no longer be allowed to operate in that space, removed the boards from the property. (Doc. 11-1, p. 6). Despite City Defendants repeated assertions that it provided Plaintiff with an opportunity to be heard on the nuisance declaration, City Defendants acknowledge that as of September 10, 2025, a day before Flats Defendants improperly took possession of the premises, Play Bar and Grill was no more. (Doc. 11-1, p.5). Furthermore, City Defendants have also acknowledged that they considered the nuisance to be abated on September 11, 2025. (Doc. 3, p. 4). Thus, Play Bar and Grill was declared a nuisance by City Defendants and then said nuisance was declared abated over the course of approximately twenty-four hours and before Plaintiff could engage in a meaningful opportunity to be heard.

City Defendants have now moved for judgment on the pleadings. The Cout should deny City Defendants motion.

I. <u>**LEGAL STANDARD**</u>

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are subject to the same standard of review that applies to a motion to

dismiss under Rule 12(b)(6). *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (citations omitted). "But we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (citations omitted). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (citations omitted).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id.*, and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A court must accept all well-pleaded factual allegations in the complaint as true, but need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)); *see also Iqbal*, 129 S. Ct. at 1949. A motion to dismiss under rule 12(b)(6) is disfavored and rarely granted. *Harris v. Am. Postal Workers Union,* 198 F.3d 245 (6th Cir. 1999)(unpublished); *see also S. Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001)(stating that dismissals for failure to state a claim under Rule 12(b)(6) are disfavored); *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)("A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.")(internal quotations omitted); *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)(It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.")(internal quotations omitted).

## II.    LAW AND ARGUMENT

### A. The Claims Against Mayor Bibb, Chief Todd, and Director Drummond Are Valid.

City Defendants first argue that the claims against Mayor Bibb, Chief Todd, and Director Drummond must be dismissed as they are redundant due to the city itself also being a named party. (Doc. 11-1, p. 8). While "personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," individuals sued in their official capacities stand in the shoes of the entity they represent. *Kentucky v. Graham,* 473 U.S. 159, 165, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

Plaintiff filed its initial complaint against the City of Cleveland and the three above-named city officials on September 10, 2025 in the Cuyahoga County Court of Common Pleas. In conjunction with this initial filing, and the amended complaint filed on September 12, 2025, Plaintiff sought a Temporary Restraining Order ("TRO"). On September 30, 2025 the Court denied Plaintiff's request for a TRO. (Doc. 8). However, Plaintiff has sought reconsideration of this decision. (Doc. 15). Government officers in their official capacity may be sued individually when a plaintiff is seeking injunctive relief. *Papasan* 478 U.S. at 276-78.

Furthermore, all three named City Defendants committed acts which render the municipality liable for the deprivation of Plaintiff's due process rights. This argument and legal authority in support is set forth in Section E of this Memorandum.

### B. Plaintiff's Federal Due Process Claim Sufficiently States A Cause Of Action Under 42 U.S.C. § 1983.

City Defendants next argue that they are entitled to judgment on Plaintiff's direct Fourteenth Amendment claim as there is no direct action at law available against a municipality under the Fourteenth Amendment to the U.S. Constitution. (Doc. 11-1, p. 9). However, Plaintiff did not assert a direct Fourteenth Amendment claim. In its Amended Complaint, Plaintiff asserts that City Defendants, by closing and boarding Plaintiff's business without notice or hearing, deprived Plaintiff of property without due process of law in violation of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. (Amended Complaint, ¶ 18).

City Defendants are correct that direct constitutional claims are not recognized in this Circuit. The Sixth Circuit Court of Appeals held in *Thomas v. Shipka* that 42 U.S.C. § 1983 provided the exclusive remedy for constitutional claims brought by the plaintiff in the matter against city officials. *Thomas*, 818 F.2d 496, 503 (6th Cir. 1987)(vacated on other grounds). However, City Defendants argument fails to consider that a plaintiff may sufficiently state a cause of action under § 1983 despite plaintiff's failure to specifically invoke § 1983. *Haddon v. City of Cleveland*, 481 F. Supp. 3d 642, 652 (N.D.Ohio 2020). In *Haddon*, the defendant, argued that it was entitled to summary judgment as plaintiff's complaint failed to plead a *Monell* claim under § 1983, as the complaint never cited to the statute and failed to mention any policy, custom, or practice of the City that violated Haddon's constitutional rights. *Id.* at 651. However, the Court held that the complaint, which alleged the City violated plaintiff's Fourteenth Amendment rights when the City failed to provide requisite notice and opportunity to be heard before demolishing plaintiff's house, was sufficient to state a cause of action under § 1983 for a Due Process violation under the Fourteenth Amendment to the United States Constitution and the Ohio Constitution. *Id.*at 652. "Because Plaintiffs' Complaint and Brief in Opposition have clearly asserted the right affected and the allegedly unlawful conduct by the City that caused the violation, the Court finds the Complaint alleges a constitutional violation despite the fact that Plaintiffs never expressly invoked § 1983." *Id.*

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (citation omitted). Plaintiff's Amended Complaint more than meets this legal threshold and is consistent with the complaint deemed adequate by the Court in *Haddon*. Consequently, the City Defendants are not entitled to judgment on this claim.

    **C. Plaintiff Was Denied Due Process Under The Ohio Constitution When City Defendants Declared Abatement of Nuisance Without Affording Plaintiff An Opportunity To Be Heard**

Under the Ohio Constitution, "Section 16, Article I * * * states that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law." *Id. See, also, Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 422-423, 1994 Ohio 38, 633 N.E.2d 504, citing *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544, 38 N.E.2d 70. This fundamental protection also applies in administrative proceedings. However, providing a person with notice and a hearing is all

that is necessary in order to comply with due process in an administrative proceeding. *See Coleman v. State Medical Board of Ohio* (10TH Dist. App. 2007), 2007-Ohio-5007, 2007 Ohio App. LEXIS 4916. *John Roberts Mgt. Co. v. Village of Obetz Ohio*, C.P. No. 09 CVF 11019, 2013 Ohio Misc. LEXIS 18087, at *6-7 (Feb. 26, 2013). *LTV Steel Co. v. Indus. Comm.* (2000), 140 Ohio App.3d 680, 688, 748 N.E.2d 1176.

Cleveland Codified Ordinances §§ 203.01-03 set forth the procedures by which the City of Cleveland declares the presence of a nuisance. On September 10, 2025, City Defendants declared Play Bar and Grill a public nuisance. In said declaration, City Defendants outlined the process by which Plaintiff could appeal the declaration. On September 11, 2025, City Defendants declared said nuisance abated. (Doc. 3, p. 4). While the Ohio Constitution provides only minimal protections for due process in administrative proceedings, City Defendants violated Plaintiff's due process rights by not providing a hearing on the nuisance declaration. Although Plaintiff was provided with a letter outlining the process of appealing the nuisance declaration, City Defendants declared the nuisance abated on September 11, 2025. (Doc. 3, p. 4). This declaration by City Defendants was made without affording Plaintiff time to file an appeal of its original decision, without making a finding that Play Bar and Grill was in fact a nuisance, and without affording Plaintiff itself to abate the nuisance if such a finding was made after hearing. Any participation in this process since the matter at bar has proceeded is functionally meaningless.

Plaintiff is not asserting a direct cause of action under the Ohio Constitution. Plaintiff is rightfully asserting that they were denied even the most basic provisions of due process that the Ohio Constitution confers on to administrative matters. City Defendants are not entitled to judgment on this claim.

### D. City Defendants Violated Plaintiff's Due Process Rights By Depriving Plaintiff Of Its Property Without Notice Or Opportunity To Be Heard

City Defendants claim that Plaintiff fails to meet the necessary pleading requirements by "failing to sufficient (sic) state facts that support his conclusory allegation of a Due Process volition (sic)." (Doc. 11-1, p. 10). However, Plaintiff succinctly pled that City Defendants boarded Play Bar and Grill without notice or an opportunity to be heard, that Plaintiff was unable to access the business with no recourse, and that City Defendants made a determination that Play Bar and Grill was a nuisance and said nuisance was ultimately deemed abated without affording Plaintiff a meaningful opportunity to be heard. (Amended Complaint, ¶ 6-17). These facts, at a minimum, establish a claim for due process violation which survives judgment on the pleadings as noted in preceding sections of this Memorandum.

City Defendants argue that because Plaintiff was afforded a post-deprivation hearing, there can be no due process violation pursuant to *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) and its progeny. However, this argument assumes that there was an emergency warranting denial of pre-deprivation notice and hearing and that the post-deprivation procedure provided a meaningful opportunity to be heard. Neither of these conditions are present in the instant matter. "[O]fficials cannot deny citizens due process by falsely invoking an emergency need for quick action." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 614 (6th Cir. 2015) citing *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 418 (3d Cir.2008).

Generally, a deprivation must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). However, "[w]hen the situation necessitates 'quick action' by the state or makes efforts to provide a meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate postdeprivation procedure." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994) (quoting *Parratt*, 451 U.S. at 539). Under the *Parratt* doctrine, "[i]f an official's conduct would otherwise deprive an individual of procedural due process but is 'random and unauthorized,' the *Parratt* doctrine allows the state to avoid liability by providing adequate remedies after the deprivation occurs." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 901 (6th Cir.2014). Thus, a court "may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy and '(1) the deprivation was unpredictable or "random"; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.'" *Id.* at 907 (quoting *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)).

None of these exceptions apply to the matter at bar. City Defendants decision to board up Plaintiff's business was not random or unauthorized and pre-deprivation process was not impossible as there was no ongoing emergency or exigent circumstance. City Defendants have gone to great lengths throughout these proceedings to allege that Plaintiff's establishment had a "long history of criminal incidents occurring at, inside, or in the immediate vicinity of" Play Bar and Grill. (City Defendants' Answer, ¶ 7). This alleged troubled history shows Defendants had, according to their own pleadings and assertions, numerous opportunities to provide Plaintiff with adequate due process. City Defendants allege

that Plaintiff's business had "been riddled with serious public safety problems" for months. (Doc. 11-1, p. 5). City Defendants apparently had months to declare Plaintiff's business a nuisance and allow Plaintiff to abate the nuisance. Yet City Defendants did absolutely nothing and did not avail themselves of their own ordinances and procedures to ensure that the public was protected *and* Plaintiff was afforded due process. Furthermore, "[W]hen a deprivation occurs through an established state procedure, then it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy." *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 508 (6th Cir. 2020)(citations omitted). This concept is excellently illustrated by the City of Cleveland's recent lawsuit against Filter Restaurant Experience, wherein in the City of Cleveland was able to follow established pre-deprivation procedure despite nearly identical allegations by the City. [1]

After the shooting, Mayor Bibb wanted to "use every dept to shut this place down" knowing these actions were potentially unlawful but not caring because "[i]f we get sued, we get sued."[2] City Defendants falsely characterize the shooting as "fatal" (Doc. 11-1, p. 10) in their pleading in an effort to make the situation seem more emergent and justify City Defendants' actions. Thankfully, the shooting on September 7, 2025 did not result in any fatalities. However, a mere three weeks after City Defendants eradicated the "danger to the life and health of residents and visitors to the City of Cleveland" (Doc. 11-1, p. 11) that was Play Bar and Grill, there was a fatal shooting outside of Punch Bowl Social, which to date remains open for business. City Defendants' argument that "quick action was essential to prevent further violence and to protect the public" (Doc. 11-1, p. 10), is wholly disingenuous.

On September 10, 2025, which was three days after City Defendants unilaterally closed Plaintiff's business and the same day Plaintiff filed its initial lawsuit, Defendant Dornat Drummond issued a letter stating that Play Bar and Grill was declared a nuisance and the establishment had been closed pursuant to Cleveland Codified Ordinances §§ 203.01-02. (Doc. 10-8, p. 1). The letter stated that Plaintiff could appeal the decision to shut down and board up the establishment, as well as the nuisance declaration, by submitting a written request within ten days of the notice. *Id*.

---

[1] Brian Koster, *City of Cleveland trying to close downtown eatery on nuisance laws.* (Oct. 13, 2025). https://www.cleveland19.com/2025/10/14/city-cleveland-trying-close-downtown-eatery-nuisance-laws/
[2] Sarah Budson, *Cleveland mayor's text after Flats shooting:'…shut this place down. If we get sued, we get sued."* (Sept. 30, 2025) https://www.news5cleveland.com/news/local-news/investigations/cleveland-mayors-text-after-flats-shooting-shut-this-place-down-if-we-get-sued-we-get-sued.

The mere existence of a post-deprivation remedy does not justify the deprivation of Plaintiff's due process rights. Even if the deprivation without due process was justified, there was no actual post-deprivation opportunity for Plaintiff to be heard. City Defendants considered the nuisance to be abated on September 11, 2025. (Doc. 3, p. 4). The declaration of abatement was not made after Plaintiff was afforded the opportunity to be heard. It was made without any hearing on the merits of City Defendants' nuisance claims and without Plaintiff's involvement. Even if the appeals process set forth by City Defendants was a meaningful remedy in this instance, City Defendants denied Plaintiff the opportunity to clear their name and retake their property based on the assertion and actions of a third party. Thus, Plaintiff was also denied the opportunity for post-deprivation procedures. Any subsequent participation in the post-deprivation procedures that Plaintiff has engaged in is functionally meaningless.

### E. Plaintiff Has Sufficiently Pled Its Wrongful Interference With Business Operations Claim and City Defendants Are not Immune From Liability

To prevail on a claim for tortious interference with a business relationship under state law, a plaintiff must prove must prove the following elements: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Byrne v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 95971, 2011-Ohio-4110, ¶ 28.

Plaintiff asserted its claim for tortious interference with a business relationship in its Amended Complaint and set forth the following facts in support: Flats Defendants and Plaintiff are engaged in a business relationship or contract via lease (Amended Complaint, ¶ 5); City Defendants were aware of this relationship as they had been in contact with both parties (Amended Complaint, ¶ 15); After conferring with Flats Defendants, City Defendants were in fact the party who informed Plaintiff that it was being locked out/evicted from its business (Amended Complaint, ¶ 15-16); Plaintiff experienced ongoing financial loss and reputation as a result of Flats Defendants' and City Defendants' actions (Amended Complaint, ¶11).

All of the elements of tortious interference are either explicitly pled or can be inferred. City Defendants argue that because they have a codified privilege to take measures to cause abatement of nuisances, they had a privilege to interfere with Plaintiff's contract with a third party. However, City

Defendants did not have privilege to conspire with Flats Defendants to have Plaintiff permanently removed from the property.  The day after Plaintiff filed suit against City Defendants, September 11, 2025, City Defendants informed Plaintiff's counsel that Flats Defendants would lockout or evict Plaintiff's business from the premises so City Defendants felt there was no further need  for the building to be boarded up. Notably, Counsel was emailed by Flats Defendants' counsel at 3:09 p.m. on September 11, 2025, wherein Counsel was informed that he should direct his questions about Plaintiff to another attorney within the firm who was copied on the email. (Doc. 7-5, p. 2). On September 12, 2024, Counsel received an email stating that Flats Defendants had changed the locks to the premises and retaken possession the previous day. (Doc. 7-5, p. 1). Plaintiff asserts that City Defendants worked with Flats Defendants in an attempt to avoid liability for its illegal action against Plaintiff. This assertion is supported by the fact that despite a years-long working relationship, Flats Defendants did not provide notice of the lockout until the day after it happened, even though the parties had been in communication on the day the lockout occurred.

City Defendants are correct that municipalities and their employees generally enjoy immunity from liability in civil actions when engaged in their governmental functions. Although a political subdivision may seek a judgment on the pleadings on the basis of immunity, asserting this defense "does not place a burden on the non-moving party to affirmatively demonstrate or plead the absence of, or any exception to, immunity." *Ganzhorn v. R&T Fence Co.*, 11th Dist. No. 2010-P-0059, 2011-Ohio-6851, ¶ 13; *accord Harris Farms* at ¶ 17 (quoting *Ganzhorn*). Therefore, City Defendants' argument that Plaintiff failed to allege any exceptions to immunity within the Amended Complaint is fruitless. "[W]here the face of the complaint does not clearly establish a political subdivision's immunity, a court must deny a motion for judgment on the pleadings. *DSS Servs., LLC v. Eitel's Towing, LLC*, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶ 11 (citation omitted).

### F. Plaintiff Has Sufficiently Pled its Claims and City Defendants Can Be Held Liable Under Monnell For A Single Act Of The City Or Any Of The Three Named City Defendants.

A complaint is not required to plead a particular legal theory, but only sufficient facts showing entitlement to relief. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (stating that in pleading a complaint, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests'") (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). As previously discussed, Plaintiff has pled its claims sufficiently and given City Defendants fair notice of the claims against them and the grounds upon which they rest.

"Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body -- whether or not that body had taken similar action in the past or intended to do so in the future -- because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id* citing, e. g., *Owen v. City of Independence*, 445 U.S. 622 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

The liability of counties and other municipal entities under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under *Monell*, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer. *Id*. at 691. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010).

The power to set policy, and therefore face *Monell* liability, rests with executive States and City bodies:

> "But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level." *Monell's* language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," *Monell*, supra, at 694, and whose decisions therefore may give rise to municipal liability under § 1983."

*Pembaur, 475* U.S. at 480.

In *Pembaur*, the Supreme Court held that a municipality can be held liable under § 1983 for a single

decision by the municipality's policymakers. *Id.* at 479-80. The municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered." *Id.* at 481 (plurality opinion). Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 99Ed. 2d 107, 108 S. Ct. 915 (1988) (plurality opinion).

Per City of Cleveland Ordinance, the Mayor is the chief executive officer of the city. C.C.O. § 68. The general duties of the mayor are as follows: to act as chief conservator of the peace within the City; to supervise the administration of the affairs of the City; to see that all ordinances of the City are enforced; to recommend to the Council for adoption such measures as he may deem necessary or expedient; to keep the Council advised of the financial condition and future needs of the City; to prepare and submit to the Council such reports as may be required by that body, and to exercise such powers and perform such duties as are conferred or required by this Charter or by the laws of the State. C.C.O. § 71. The Mayor also has the authority to appoint and remove directors of all departments. C.C.O § 70. Thus, the Mayor's decisions are final and not constrained by official policies of superior officials, making whoever holds that office a policymaker of the municipality.

Mayor Justin Bibb is the ultimate authority over both Director Drummond and Chief Todd. He ordered the use of *every* department at his disposal to summarily shut down, and board up Play Bar and Grill without care for the legal consequences of such an act.[3] Even if the deprivation could be attributed to Chief Todd for being the ultimate authority in ordering officers to board up Play Bar and Grill or Director Drummond for declaring Play Bar and Grill a nuisance with no due process, Mayor Bibb approved of and condoned, if not ordered, the due process violation committed against Play Bar and Grill.

Plaintiff has always asserted that the boarding up of its business without due process violated its Fourteenth Amendment Rights. The City can be held liable for this singular action no matter which named City Defendant it can be attributed to, as Mayor Bibb's acts or edicts may fairly be said to represent official

---

[3] Sarah Budson, *Cleveland mayor's text after Flats shooting:'…shut this place down. If we get sued, we get sued."* (Sept. 30, 2025) https://www.news5cleveland.com/news/local-news/investigations/cleveland-mayors-text-after-flats-shooting-shut-this-place-down-if-we-get-sued-we-get-sued.

policy and he acquiesced to, if not ordered, the deprivation at issue. As a matter of law, the City of Cleveland "policy" through *Monell* can be derived from a single action of Mayor Bibb, Director Drummond, or Chief Todd.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny City Defendants' Motion for Judgment on the Pleadings.

Respectfully submitted,

By: \S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**
323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone:  (216) 241-0520
Fax:     (216) 241-6961
E-mail: jpm@jmorse-law.com

COUNSEL FOR PLAINTIFF

**LOCAL RULE CERTIFICATION**

This case is currently assigned to the standard track. This memoranda conforms to the page limitations set forth in Local Rule 7.1 and was filed within the time limits mandated by the Rules.

\S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**

**CERTIFICATE OF SERVICE**

A copy of the foregoing was electronically filed with the Clerk of Courts on this 30th day of October, 2025. Notice of this filing will be served upon opposing counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

\S\ JOSEPH P. MORSE
**JOSEPH P. MORSE (0073298)**